UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL DEBAGIO and
JUSTIN C. WILBUR,

                                Plaintiffs,

        -v-                                     5:14-CV-0161
                                                (DNH/TWD)

METROPOLITAN CASUALTY
INSURANCE COMPANY,

                                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

SUGARMAN LAW FIRM LLP                   KEVIN R. VAN DUSER, ESQ.
Attorneys for Plaintiffs
211 West Jefferson Street
Syracuse, NY 13202


COSTELLO, COONEY LAW FIRM               JAMES J. GASCON, ESQ.
Attorneys for Defendant                 TERANCE V. WALSH, ESQ.
5701 West Genesee Street
Camillus, NY 13101

DAVID N. HURD
United States District Judge

### MEMORANDUM, DECISION and ORDER

**I.        INTRODUCTION**

        Presently under consideration is: (a) a motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56 filed by plaintiffs Michael DeBagio ("DeBagio") and Justin C.

Wilbur ("Wilbur") (ECF No. 10) and (b) a cross motion for summary judgment made by defendant

Metropolitan Casualty Insurance Company ("MetLife") (ECF No. 11).  Both parties have

responded to the pending motions and the matter is fully briefed.  See ECF Nos. 12, 13, 14.

II.      **FACTUAL BACKGROUND**

The following facts are gleaned from the parties' submissions, including the statements submitted pursuant to Northern District Local Rule 7.1.

DeBagio is a resident of Cayuga County and Wilbur is a resident of Onondaga County. On or about November 19, 2012, DeBagio entered into an automobile insurance policy, policy number 2972649940, with MetLife (the "Insurance Policy"). See Insurance Policy, ECF No. 11-5. The Declarations on the Insurance Policy listed and identified a 2011 Polaris snowmobile, Model Pro R, vehicle identification number SN1BP6NS5BC137886 (the "2011 Polaris") as an insured vehicle. See Id. at 48[1]. The only other vehicle listed in the Insurance Policy was another snowmobile, a 2012 Skidoo. DeBagio is the only named insured on the Insurance Policy.

DeBagio maintains that during the process of insuring the 2011 Polaris, the MetLife agent assisting him, Michael Preble ("Preble"), did not inquiry into whether he owned the snowmobile. See Affidavit of Michael DeBagio, ECF No. 10-12, at ¶ 5. Preble states that DeBagio orally represented that the 2011 Polaris was in DeBagio's name. See Deposition of Michael Preble, ECF No. 11-6, at 9. While procuring the Insurance Policy, DeBagio did not fill out an application asserting ownership of the 2011 Polaris. Further, Preble did not ask for, or receive, any evidence of ownership of the 2011 Polaris from DeBagio. See Id. at 8.

The parties agree that the 2011 Polaris was at all times owned by Wilbur and not DeBagio, including at the time the Insurance Policy was entered into. Additionally, DeBagio did not contribute to the purchase of the 2011 Polaris or register it in his name. Debagio stated that he added the 2011 Polaris to his existing Insurance Policy as a result of his friendship with Wilbur and that it might be "financially advantageous". See Deposition of Michael DeBagio, ECF No. 11-11, at 8-11.

---

[1]  Page notations reflect those shown on the ECF system.

The Insurance Policy provides that a snowmobile constitutes a Recreational Vehicle and an Automobile pursuant to the policy's Recreational Vehicle Endorsement.  See ECF No. 11-5 at 47.  The New York Special Provisions Endorsement of the Insurance Policy defines a Covered Automobile as "any motor vehicle described in the Declarations." Id. at 44.  The only vehicles listed in the Declarations were the 2011 Polaris and the 2012 Ski Doo.  Id. at 48.

The Policy further provides that defendant "will pay reasonable medical expenses incurred by any other person for bodily injury as a result of occupying or using a covered automobile at the time of the accident with [the policy holder's] consent." Id. at 11.  Lastly, the Insurance Policy states that MetLife "will pay for loss to your covered automobile or to a non-owned automobile, caused by collision, including its equipment, minus any applicable deductible shown in its Declarations." Id. at 18.  The Insurance Policy period ran from November 19, 2012 through November 19, 2013.

On February 24, 2013, while Wilbur was operating the 2011 Polaris in Lewis, New York, it went off the trail and struck a tree.  As a result of the accident, Wilbur sustained injuries requiring medical attention and the 2011 Polaris was damaged. Thereafter, DeBagio reported the accident to MetLife and submitted a Notice of Claim.  At that time, DeBagio informed Preble that Wilbur owned that 2011 Polaris.  On or about March 8, 2013, MetLife issued a reservation of rights letter to DeBagio informing him his claim was under investigation.  See ECF No. 10-14. After its investigation, MetLife cancelled coverage for the 2011 Polaris and refunded all premium payments to DeBagio, denying coverage for Wilbur's medical expenses and the damage to the 2011 Polaris on the grounds that the accident involved a snowmobile that was not owned by, or registered to, DeBagio and that the operator involved in the loss, Wilbur, was not listed on the Policy.

Plaintiffs file this action on January 8, 2014 in Cayuga County, New York seeking a declaratory judgment that the Insurance Policy requires MetLife to provide payment for Wilbur's reasonable medical expenses and the damage sustained to the 2011 Polaris and for breach of contract. See Complaint, ECF No. 1-1. Defendant removed this action to the Northern District of New York on February 13, 2014.

## III.    LEGAL STANDARDS

### (a) Summary Judgment Standard.

Summary judgment is appropriate where, construing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. PRO. 56(c); Richardson v. Selky, 5 F.3d 616, 621 (2d Cir. 1993). The party moving for summary judgment has the burden to establish "'that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law.'" Bowen v. National R.R. Passenger Corp., 363 F. Supp. 2d 370, 373 (N.D.N.Y. 2005) (quoting Rodriquez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995)). A fact is "material" for purposes of this inquiry if it: "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. A party opposing summary judgment "'may not rest upon the mere allegations or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting First Nat'l Bank of Ariz. v. Cities

Svcs.Co., 391 U.S. 253, 288 (1968)).  Those specific facts must be supported by "citing to particular parts of materials in the record." FED. R. CIV. PRO. 56(c)(1)(A).  "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

      *(b) Declaratory Judgment.*

      The rules and principles governing declaratory judgments are well known. "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).  Declaratory judgment is a remedy and not a cause of action or any right that otherwise would alter the substance of the case or any jurisdictional requirements. See Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action.") (citations omitted); Bristol Village, Inc. v. Louisiana–Pacific Corp., 916 F. Supp. 2d 357, 369 (W.D.N.Y. 2013). As a remedy, declaratory judgment serves to clarify where litigants stand in an ongoing relationship with each other, to prevent or to limit damages that are reasonably certain to occur. See In re Prudential Lines Inc., 158 F.3d 65, 70 (2d Cir.1998) ("Where the contingent event upon which the controversy rests is unlikely to occur, the controversy lacks sufficient immediacy and reality to warrant declaratory relief."); Luckenbach S.S. Co. v. U .S., 312 F.2d 545, 548 (2d Cir.1963). "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving

rise to the proceeding. It follows as a general corollary to this rule that if either of these objectives can be achieved the action should be entertained and the failure to do so is error." <u>Broadview Chem. Corp. v. Loctite Corp.</u>, 417 F.2d 998, 1001 (2d Cir. 1969).

## IV.    **DISCUSSION.**

In their motion, DeBagio and Wilbur argue that the New York Special Provisions Endorsement of the Insurance Policy modified the definition "Covered Automobile" by replacing it to cover any motor vehicle described in the Declarations, which included the 2011 Polaris.  As a result, they assert that they are entitled to judgment as a matter of law.  <u>See</u> Pl.'s Mem. Supp. of Summ. J. ("Pl.'s Memo"), ECF No. 10-15.

MetLife asserts that since DeBagio did not own or have possession of the 2011 Polaris at the time the Insurance Policy was issued or at the time of loss, he had no insurable interest in the snowmobile and the Policy is therefore void pursuant to New York State law.  <u>See</u> Df.'s Mem. Supp. of Summ J. ("Def.'s Memo"), ECF No. 11-13.

*(A) <u>Insurable Interests</u>.*

New York Insurance Law § 3401 provides:

No contract or policy of insurance on property made or issued in this state, or made or issued upon any property in this state, shall be enforceable except for the benefit of some person having an insurable interest in the property insured.  In this article, "insurable interest" shall include any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage.

"The law of [New York] State requires that the named insured have an insurable interest in the subject matter of the policy of insurance." <u>Citizens Sav. and Loan Ass'n of New York v. Proprietors Ins. Co.</u>, 435 N.Y.S.2d 303, 305 (App. Div. 1981).  "It has long been the rule that, in order to prevent fraud and crime and to prohibit wagering contracts on property in which the insured possesses no interest, the lack of an insurable interest in the property insured

renders the [insurance] void and unenforceable." Azzato v. Allstate Ins. Co., 951 N.Y.S.2d 726, 733 (App. Div. 2012).  However, "[a] legal or equitable interest in the property insured is not necessary to support an insurable interest."  Id. at 732; see also Cassadei v. Nationwide Mut. Fire Ins. Co., 799 N.Y.S.2d 687, 687 (App. Div. 2005) ("[O]wnership is not necessary to create an insurable interest."); Norris v. Alliance Ins. Co., 358 N.Y.S.2d 203, 205 (App. Div. 2010).  "In general a person has an insurable interest in the subject matter insured where he has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against." Scarola v. Ins. Co. of North Am., 292 N.E.2d 776, 777 (N.Y. 1972); see also Stainless Inc. v. Employers Inc., 418 N.Y.S.2d 76 (App. Div. 1986).  "Mere possession or license to use the property is insufficient to support an insurable interest where the insured would experience no direct economic loss by its destruction."  Azzato, 951 N.Y.S.2d at 733 (internal quotation marks and citations omitted).

(i) *DeBagio's Interest*.

Debagio admits that he did not own the 2011 Polaris at the time the Insurance Policy was entered into or at the time of loss.  Additionally, he did not possess the snowmobile, have it registered in his name, contribute to the purchase price of the snowmobile or utilize it in any meaningful way.  Thus, because plaintiffs have readily admitted that DeBagio had no connection to the 2011 Polaris aside from procuring the insurance and paying the insurance premiums, plaintiffs have not provided adequate admissible evidence to demonstrate that DeBagio had an insurable interest in the 2011 Polaris.

*(ii) Estoppel.*

However, the Court finds that if DeBagio's statements concerning his procurement of the Insurance Policy are true, MetLife should be estopped from asserting his lack of insurable interest as a defense.

In order to invoke the doctrine of equitable estoppel, a plaintiff must show a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made and an injury sustained by the party asserting the estoppel by reason of his reliance. Ripple's of Clearview, Inc. v. Le Havre Associates, 452 N.Y.S.2d 447, 449 (App. Div. 1982); Cyberchron Corp. v. Calidata Sys. Dev., Inc., 47 F.3d 39, 44 (2d Cir. 1995). "Once the party seeking [enforcement of an insurance contract] has substantially performed his obligations, the court should consider the qualify of the illegality, the extent of public harm, the relative guilt of the parties, and the cruelty of the forfeiture involved in a denial of remedy." Murray Walter, Inc. v. Sarkisian Bros., Inc., 486 N.Y.S.2d 396, 399 (App. Div. 1985) (internal quotation omitted). "One who accepts and retains the benefits of a contract cannot allege, as a defense to an action upon it, that it is void as against public policy." Bonta v. Gridley, 78 N.Y.S. 961, 963 (App. Div. 1902). However, the U.S. District Court for the Eastern District of New York, in interpreting a New York State law case, has found that the requirement of New York Insurance Law § 3401 are not subject to an estoppel argument because they are statutory. See Mikaelian v. Liberty Mutual Insurance, 2016 WL 4702106, at *6 (E.D.N.Y. Sept. 8, 2016).

Construing the evidence in the light most favorable to plaintiffs, Preble, DeBagio's MetLife agent, did not ask whether he owned the 2011 Polaris at the time it was added to DeBagio's Insurance Policy in November 2012. Nor did Preble request any documentary evidence that the 2011 Polaris was owned by DeBagio. DeBagio did not complete an application

or other written document representing that he had an ownership interest in the snowmobile.

Further, the Insurance Policy itself does not contain any representation or warranty by the insured that the vehicle covered by the Policy was owned by the named insured. While the Policy defines a "covered automobile" as "an automobile owned by you or hired under a written contract for one year or more", the New York Special Provisions Endorsement deleted and replaced such definition with "any motor vehicle described in the Declarations", which included the 2011 Polaris. See Insurance Policy, ECF No. 11-5, at 6, 44. As such, MetLife affirmatively removed the ownership requirement from its own Policy pursuant to the Special Provisions Endorsement.

Given that MetLife has significantly more knowledge of New York State Insurance Law, experience in implementing related insurance rules and regulations and was the party responsible for drafting the Insurance Policy, it will be estopped from asserting DeBagio's lack of insurable interest if he did in fact remain silent concerning ownership of the 2011 Polaris at the time the Insurance Policy was procured. See St. Paul's Roman Catholic Church v. Westchester Fire Ins. Co., 319 N.Y.S.2d 239, 241 (Sup. Ct. 1971) (holding that it is not a violation of public policy to hold an insurance company estopped from questioning the sufficiency of the insured's interest.). It would be inequitable to permit an experienced insurer such as MetLife to fail to perform its own due diligence and ensure that the Insurance Policy was compliant with New York State Insurance Law § 3401, collect and retain insurance premiums and then deny coverage at the time when a claim is made by an insured who acted in good faith. See Liberty Nat'l Life Ins. Co. v. Weldon, 100 So. 2d 696, 708 (Ala. 1957) (holding that a life insurance company had "the duty to use reasonable care not to issue a policy of life insurance in favor of a beneficiary who has no interest in the continuation of life of the insured."). It does

not appear that DeBagio received any notice or information from MetLife concerning this crucial insurable interest requirement until after the accident leading to the plaintiffs' claim.  As the answer to whether DeBagio made oral representations concerning ownership of the 2011 Polaris is a material fact to be determined by a trier of fact, defendant's motion for summary judgment on the grounds that DeBagio lacked an insurable interest will be denied.

(iii) *Material Misrepresentation*.

MetLife contends at the time the Insurance Policy was procured, DeBagio verbally represented to Preble that he owned the 2011 Polaris.

"Under New York law . . . an insurance policy issued in reliance on a material misrepresentation is void from its inception."  Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan, 77 F.3d 48, 52 (2d Cir. 1996).  New York State Insurance Law § 3105(a) defines misrepresentation as "a false statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof."  N.Y. INS. LAW § 3105(a). "Rescission is available even if the material misrepresentation was innocently or unitentionally made."  Nationwide Mut. Fire Ins. Co. v. Pascarella, 993 F. Supp. 134, 136 (N.D.N.Y. 1998) (D.J. Scullin); Curanovic v. New York Cent. Mut. Fire Ins. Co., 762 N.Y.S.2d 148 (App. Div. 2003).

If Preble's testimony is accepted as true, DeBagio would not be entitled to sustain an estoppel argument.  However, the determination of whether DeBagio made a misrepresentation concerning ownership of the 2011 Polaris at the time the Insurance Policy was procured is a question of fact for a jury.

*(iv) <u>Wilbur's Interest</u>.*

Plaintiffs assert that even if DeBagio lacked an insurable interest, Wilbur had an insurable interest in the 2011 Polaris upon which recovery from the Insurance Policy can be made.  The parties agrees that Wilbur does not appear on the face of the Policy, as a named insured or an additional insured.  However, plaintiffs argue that Wilbur is entitled to coverage under the Insurance Policy because he was a third party beneficiary.

One who seeks to recover as a third-party beneficiary of a contract "must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." <u>State of Cal. Pub. Employees' Retirement Sys. v Shearman & Sterling</u>, 741 N.E.2d 101, 109 (N.Y. 2000); <u>see also</u> <u>Internationale Nederlanden (U.S.) Capital Corp. v Bankers Trust Co.</u>, 689 N.Y.S.2d 455, 461 (App. Div. 1999); <u>Binghamton Masonic Temple, Inc. v. City of Binghamton</u>, 623 N.Y.S.2d 357, 360 (App. Div. 1995). "[The] benefit must be more than merely incidental to the benefit on that third party.  It must be such as to evidence an intent to permit enforcement by the third party." <u>Hoover v. Gershman Inv. Corp.</u>, 774 F. Supp. 60, 65 (D. Mass. 1991).

In determining whether a third party was an intended beneficiary to a contract, the actual intent of the parties is critical. The best evidence of the contracting parties' intent is the language of the agreement itself.  <u>See</u> <u>Chu v Dunkin' Donuts Inc.</u>, 27 F. Supp. 2d 171 (1998); <u>Zelber v Lewoc</u>, 776 N.Y.S.2d 134, 135 (App. Div. 2004); <u>Nepco Forged Prods., Inc. v. Con. Edison Co. of N.Y.</u>, 470 N.Y.S.680, 681 (App. Div. 1984).  An insurance policy covers the named insureds and persons who fall under the policy's definition of insured.  <u>See</u> <u>Sanabria v. American</u>

Home Assur. Co., 68 N.Y.2d 866, 868 (App. Div. 1986).  "There is a strong presumption against finding binding obligation in documents which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents." Teachers Ins. and Annuity Ass'n of America v. Tribune Co., 670 F. Supp. 491, 499 (S.D.N.Y. 1987).

The Insurance Policy provides coverage for automobile medical expenses for "any other person for bodily injury as a result of", among other things, "using a covered automobile at the time of the accident with [the policy holder's] consent".  See Insurance Policy, ECF No. 11-5, at 11.  The Policy evidences the parties' intent to provide medical coverage to other persons injured while operating the covered vehicles, including the 2011 Polaris.  As such, Wilbur has satisfied the second and third requirements to be considered a third party beneficiary, that the Policy intended to benefit him and that benefit is sufficiently immediate, rather than incidental.  However, given the question of fact remaining as whether DeBagio misrepresented his lack of ownership in the 2011 Polaris at the time the Policy was procured, Wilbur cannot at this time establish the first requirement to enforce the Policy as a third party beneficiary, that a valid and binding contract existed between DeBagio and MetLife.

(B) *Interpretation of Policy*.

MetLife argues even if DeBagio had an insurable interest in the 2011 Polaris, it is entitled to judgment as a matter of law because the plain language of the Insurance Policy limits coverage to snowmobiles owned by the named insured, DeBagio.

"Insurance policies are, in essence, creatures of contract, and accordingly, subject to principles of contract interpretation." In re Estates of Covert, 761 N.E.2d 571, 576 (N.Y. 2001). Accordingly, "contract of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and

unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense." Id. at 576.  "[I]t is the court's task to enforce a clear and complete written agreement according to the plain meaning of its terms, without looking to extrinsic evidence to create ambiguities not present on the face of the document." 150 Broadway N.Y. Assoc., L.P. v. Bodner, 784 N.Y.S.2d 811, 815 (App. Div. 2004).  The party claiming insurance coverage bears the burden of proving entitlement." Nat'l Abatement Corp. v. Nat'l Union Fire Ins. Co. of Pitt., PA, 824 N.Y.S.2d 230, 232 (App. Div. 2006).

"A contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." Feldman v. National Westminster Bank, 760 N.Y.S.2d 3, 5 (App. Div. 2003).  However, mere assertion by a party that contract language means something other than what is clear when read in conjunction with the whole contract is not enough to create an ambiguity sufficient to raise a triable issue of fact. See Ruttenberg v. Davidge Data Sys. Corp., 626 N.Y.S.2d 174, 178 (App. Div. 1995).  "Whether an agreement is ambiguous is a question of law for the courts." Azzato v. Allstate Ins. Co., 951 N.Y.S.2d 726, 732 (App. Div. 2012).

MetLife notes that according to the Insurance Policy, a "covered automobile" is defined as "an automobile, or a trailer designed for use with an automobile, owned by you or hired under a written contract for one year or more and for which a specific premium is shown in the Declarations." See Insurance Policy, ECF No. 11-5, at 6.  The parties do not dispute that a snowmobile would constitute an "automobile" under the Policy as the definition of "automobile" including "recreational vehicle", which expressly includes snowmobiles. Id. at 47.  Defendant acknowledges that the New York Special Provisions Endorsement deleted the definition of "covered automobile" and replaced it with "a motor vehicle described in the Declarations", but argues that a snowmobile should not be considered a "motor vehicle" for purposes of the Special Provisions Endorsement as it is not a vehicle intended to be used on public roads.  Defendant

argues that the Special Provisions Endorsement "reflects the fact that the insured could add or remove automobiles and vehicles to the Policy without having to alter the endorsements every time." See Def. Reply Memo., ECF No. 14, at 4.

However, such an interpretation is particularly tortured when viewing the Insurance Policy as a whole. The only two vehicles listed in the Declarations are in fact snowmobiles and the Policy does not cover any motor vehicles that are used on public roads. The reference to the "motor vehicle contained in the Declarations" is contained in the Special Provisions Endorsement, not the main policy. Therefore, it would certainly be odd to apply to the "covered automobiles" definition contained in the main policy rather then the definition contained in the Special Provisions Endorsement which specifically references the snowmobiles contained in the Declarations. If MetLife's interpretation is accepted, it certainly would seem to render the Special Provisions Endorsement meaningless and valueless, when it was clearly meant to apply to the snowmobiles it is directly referencing in the Declarations.

"[S]ince the policy is drawn by the insurer, it is to be liberally construed in favor of the insured." Stainless, Inc. v. Employers First Ins. Co., 418 N.Y.S.2d 76, 82 (App. Div. 1979). At best, the Insurance Policy uses inconsistent definitions of "automobile" and "motor vehicle", which would create ambiguity covering coverage. "[W]here the meaning of a policy of insurance is in doubt or is subject to more than one reasonable interpretation, all ambiguity must be resolved in favor of the policyholder and against the company which issued the policy." Burriesci v. Paul Revere Life Ins. Co., 679 N.Y.S.2d 778, 779 (App. Div. 1998) (internal quotation omitted); see also Dutkanych v. United States Fid. & Guar. Co., 675 N.Y.S.2d 623, 624 (App. Div. 1998) (where "an insurer attempts to limit liability by use of an ambiguously worded provision which is subject to more than one reasonable construction, the courts will construct it strictly against the insurer.").

Therefore, the Court finds that the 2011 Polaris constitutes a "covered automobile" if

in fact a jury finds that DeBagio did not misrepresent an ownership interest in the 2011 Polaris.

The Insurance Policy further provides coverage for "reasonable medical expenses incurred by any other person for bodily injury as a result of: (1) occupying or using a covered automobile at the time of the accident with [the policy holder's] consent." <u>See</u> Insurance Policy, ECF No. 11-5, at 11.  Based upon the above policy language, there would be coverage under the Policy for Wilbur's medical expenses.  The Policy also provides coverage for the "loss to your covered automobile or to a non-owned automobile, caused by collision, including its equipment, minus any applicable deductible shown in the Declarations." <u>Id</u>. at 18.  Accordingly, the Policy would provide coverage for damage to the 2011 Polaris as a result of the February 2013 accident.  Therefore, if it is found by the trier of fact that DeBagio did not misrepresent an ownership interest in the 2011 Polaris to MetLife, the Insurance Policy would provide coverage for Wilbur's reasonable medical expenses and damage to the 2011 Polaris.

*(C) <u>Rescission</u>.*

MetLife requests that if its motion for summary judgment is denied, that it be granted permission to amend its answer to seek recission of the Insurance Policy as a result of its unilateral mistake.

Rescission of a contract is appropriate upon a showing of a unilateral mistake induced by fraud.  <u>Litinov v. Hudson</u>, 905 N.Y.S.2d 400, (App. Div. 2010). "The right to prospectively cancel an automobile liability policy procured through fraud and misrepresentation has been consistently recognized by the courts." <u>National Superlease v. Reliance Ins. Co. of N.Y.</u>, 507 N.Y.S.2d 16, 17 (App. Div. 1986).  "Although [the insurer] may not escape liability for claims which arose during the precancellation period, the plaintiff cannot be permitted to request further enforcement of its otherwise illegal contract with [the insurer]." <u>Id</u>.

MetLife has never issued a disclaimer of coverage on the basis of fraud, rather coverage was denied on the basis of DeBagio's lack of an insurable interest.  Therefore, defendant's request to amend its answer will be denied.

## IV.  CONCLUSION

For the reasons discussed above, neither plaintiffs nor MetLife have demonstrated an entitlement to summary judgment.  A trier of fact will need to determine the material fact of whether DeBagio affirmatively misrepresented an ownership interest in the 2011 Polaris at the time such vehicle was added to his Insurance Policy.  If he did not, MetLife will be estopped from asserting the defense of DeBagio's lack of an insurable interest.  If a trier of fact finds that he did in fact misrepresent to MetLife that he had an ownership interest in the 2011 Polaris, the Insurance Policy will be considered void pursuant to New York State Insurance Law § 3401 for a lack of an insurable interest.  Such a genuine issue of material fact precludes the granting of summary judgment  in favor of either party.

Therefore, it is ORDERED that:

1.  Plaintiffs' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 10) is **DENIED**; and

2.  Defendant's cross motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 11) is **DENIED**.

IT IS SO ORDERED.

United States District Judge

Dated: March 31, 2017
      Utica, New York

- 16 -